UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MARSHALL, et al.,

        Plaintiffs,                    Civil Action No.
                                                    08-CV-13257

vs.

                                                    PAUL D. BORMAN
CITY OF FARMINGTON HILLS, et al.,        UNITED STATES DISTRICT JUDGE

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS DISMISSAL/SUMMARY JUDGMENT PURSUANT TO THE ROOKER-FELDMAN DOCTRINE

### I.  INTRODUCTION

This is a civil rights case under 42 U.S.C. §§ 1983 and 1985 with pendent state law claims. Plaintiffs are David Marshall ("Marshall"), an eleven-year veteran police officer with the City of Detroit Police Department, and his wife, Chandra Marshall ("Mrs. Marshall"), residents of Farmington Hills, Michigan.  David Marshall claims, *inter alia*, that his federal constitutional rights were violated during and after a traffic stop that occurred near his residence in Farmington Hills, Michigan, at approximately 1:05 a.m. on December 13, 2006.  Chandra Marshall brings a claim for loss of consortium.

Defendants are: (1) the City of Farmington Hills, Michigan, (2) Farmington Hills Police Officer Michael Meister, (3) Farmington Hills Police Officer Jarrett, (4) Farmington Hills Police Sergeant Soderlund, (5) Farmington Hills Police Sergeant Cronin, (6) Farmington Hills Police Chief Dwyer, (7) and "Several Unknown Farmington Hills Police Supervisors."

The Amended Complaint contains the following five counts:

Count I:   Violation of 42 U.S.C. § 1983

Count II:  Violation of 42 U.S.C. § 1985

Count III: Loss of Consortium

Count IV:  Assault and Battery / Excessive Force

Count V:   False Imprisonment

All counts except Count III are brought by Marshall only. Count III is brought by Mrs. Marshall only.

Now before the Court is Defendants' Amended Motion for Summary Judgment [docket entry 40]. This matter has been fully briefed and the Court heard oral argument on January 7, 2010. For the reasons that follow, the Court grants summary judgment to Defendants since the Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. The Court's termination of Plaintiffs' case can also be described as dismissal, similarly based on lack of jurisdiction pursuant to the Rooker-Feldman doctrine.

## II. BACKGROUND[1]

The events giving rise to this lawsuit occurred during a traffic stop of Marshall's vehicle, which ultimately resulted in Marshall being tasered by Farmington Hills Police Officer Jarrett. The events took place during the early morning hours of December 13, 2006, in Farmington Hills, Michigan. The traffic stop was conducted by Farmington Hills Police Officer Meister, who was on patrol that night. Officer Jarrett arrived at the scene later. The details surrounding the traffic stop are not relevant for the present purposes.

---

[1] The background is gleaned from the evidence attached to the parties' papers.

Criminal charges for obstructing were brought against Marshall in connection with his conduct during the traffic stop.[2] In addition, Marshall was disciplined by the Detroit Police Department for his conduct during the traffic stop. Defs.' Ex. 16.[3] Marshall was represented by attorney Arnold Reed throughout the state court criminal proceedings and the City of Farmington Hills was represented by Assistant City Attorney Steve Meads.

Marshall and the City reached what is known as a "release-dismissal agreement." As defined by the United States Supreme Court, a release-dismissal agreement is "an agreement in which a criminal defendant releases his right to file an action under 42 U.S.C. § 1983 in return for a prosecutor's dismissal of pending criminal charges." *Town of Newton v. Rumery*, 480 U.S. 386, 389 (1987). This agreement was placed on the record during a state court proceeding on June 21, 2007, before Judge Marla E. Parker of the 47th District Judicial Court in Farmington Hills, Michigan. Defendant was present at the proceeding. The hearing transcript, attached as Exhibit 7 to Defendants' Amended Motion, reads, in pertinent part:

> MR. REED: Your Honor, in this matter the prosecutor and myself have reached an agreement. The agreement will be that the [criminal] cases will be dismissed with prejudice against Mr. Marshall contingent upon an agreement as between the prosecutor and myself as to the exact wording of a statement to be prepared for media purposes as well as a release of civil liability with regard to any events or transactions that arise out of the incidents that bring us here today. I have conferred with Mr. Marshall and Mr. Marshall is in agreement with that; is that correct, Mr. Marshall?

---

[2] Elsewhere in the record, the parties state that Marshall was charged with interfering with a police officer.

[3] Marshall was found guilty of "Conduct Unbecoming an Officer," for which a five-day suspension was recommended. The record is not clear as to whether this five-day suspension was ever served. Defs.' Ex. 16.

DEFENDANT MARSHALL: Yes.

MR. REED: In addition, you Honor, as soon as the specifics of the media statement are hammered out and the mutual release of all claims, we will submit a written order reflecting the dismissal with prejudice and that will be a final order closing the cases.

THE COURT: Mr. Meads?

MR. MEADS: What counsel has placed on the record is correct, the dismissal with prejudice would obviously be conditioned upon the two issues as relates to the civil release and the press release as it relates to this incident but that is my understanding, you Honor and that paperwork will be prepared and hopefully be completed by the end of today so that this matter can be taken off the Court's docket.

THE COURT: Thank you. Mr. Marshall, do you understand that you do have the right to have a trial by judge or a jury on these matters?

DEFENDANT MARSHALL: Yes.

THE COURT: And obviously if I adopt this resolution there will be no trial in this matter, do you understand that?

DEFENDANT MARSHALL: Yes.

THE COURT: Is anyone forcing you to enter this agreement?

DEFENDANT MARSHALL: No.

THE COURT: Is this your own choice?

DEFENDANT MARSHALL: Yes.

THE COURT: Have you had the opportunity to discuss this agreement with counsel?

DEFENDANT MARSHALL: Yes.

THE COURT: Thank you.

* * * *

> THE COURT: Thank you, then noting that then [sic], upon the conditions being met the matter will be dismissed.

At some point after the June 21, 2007, hearing before Judge Parker, Marshall filed a Motion for Trial Date. Judge Parker held a hearing on Marshall's motion on August 14, 2007. The transcript of this proceeding is attached as Exhibit 8 to Defendants' Amended Motion for Summary Judgment. Ruling from the bench, Judge Parker denied the motion, stating that

> [a]t this point, I see no authority to grant a trial. Clearly the settlement placed on the record was voluntary, understandingly freely made and so far as I'm concerned, this case is over. Everyone is bound by the agreement that was placed on the record.

Defs.' Ex. 8, p. 8. Before Judge Parker ruled on Marshall's motion, Marshall's attorney, Mr. Reed, argued that the release-dismissal agreement was unenforceable because one of the contingencies—that the parties agree on the exact language for the press release—was not satisfied. Specifically, Mr. Reed advanced the following argument before Judge Parker:

> As the Court will recall, we were here on . . . June . . . 21, 2007 and we put a settlement on record which dealt with Mr. Marshall and the Farmington Hills Police and their agent dropping subsequent charges on him in exchange for mutually agreeing that Mr. Marshall would not bring a civil lawsuit and agreeing to a mutual press release for lack of a better term.
>
> The contingency upon which the case was resolved did not follow through in that the press release terms did not hammer out because the parties could not agree. Based on the contingency that those things happen, specifically the press release being agreed to, your Honor, I'm asking the Court to afford Mr. Marshall a trial by jury.

*Id*. at p. 3. Mr. Meads, on behalf of the People, was then given an opportunity to respond to Mr. Reed's argument, arguing that Marshall did not "in good faith pursue[] the [release-dismissal] agreement." *Id*. at p. 5. Mr. Reed, as the movant, was afforded an opportunity to respond to Mr. Meads' counter-argument. *Id*. at p. 6. After hearing all the argument, Judge Parker denied

Marshall's motion, held that the release-dismissal agreement was enforceable, and dismissed the criminal charges against Marshall pursuant to the terms of the parties' agreement. On the record, Judge Parker stated as follows:

> Thank you, the record should reflect I've had the opportunity to review the motion and I've heard the argument in court today. I'll indicate for the record that I was a little puzzled when I got this motion for trial date because frankly we – this Court was in session on June 21st in which the parties placed an agreement on the record to resolve all of the issues in this case and other issues surrounding it. I'll certainly indicate that at the time of – first of all, the case had been scheduled for trial I believe on June 18th, the Court was involved in another trial and there were ongoing discussions up to the date – the trial date of June 21st when the matter was called in for trial. An agreement was reached and placed on the record. I know at the time [I] questioned Mr. Meads as to whether he had authority on behalf of the City and questioned not only counsel but Mr. Marshall on the record specifically about this agreement and it was stated on the record.
>
> Further I believe I even asked the parties do you want me to hold on to this case and everyone said no, the case is over and I gave the opportunity so at this point this motion for trial date in my mind is puzzling. My read of this is that this case is over. Clearly in looking at the motion there's no authority cited by any party to indicate that would not be the case. Clearly case law and settlements in which I've had the opportunity to look at for other circumstances certainly indicates that an agreement on the record is in fact a binding agreement as to all parties and it's interesting to note that maybe there's a holdup for a press release. Frankly, something that happened on June 21st, now that it's August 14th is probably moot anyway. I'm not sure that the press has any great interest in this file and the Court does have a public record which notes a dismissal and if the press is interested, that's certainly what the court file should show.
>
> At this point I see no authority to grant a trial. Clearly the settlement placed on the record was voluntarily, understandingly freely made and so far as I'm concerned, this case is over. Everyone is bound by the agreement that was placed on the record.

*Id*. at pp. 6-8.

Seven days after the hearing on Marshall's Motion for Trial Date, on August 21, 2007, Judge Parker issued a written order dismissing the charges against Marshall. Defs.' Ex. 9. The order

6

contains two decrees:

> **IT IS HEREBY ORDERED** that Plaintiff's [sic[4]] Motion for Trial Date is hereby denied.
>
> **IT IS FURTHER ORDERED** that [the criminal cases against Marshall] are dismissed with prejudice. This is a final order that closes the above-mentioned cases.

*Id.* (emphasis in original).

Marshall did not appeal Judge Parker's determination that the release-dismissal agreement was enforceable.

### III. ANALYSIS

In their Amended Motion for Summary Judgment, Defendants first argue, based on Judge Parker's determination that the release-dismissal agreement is enforceable, that the present case is barred by the doctrine of res judicata (claim preclusion) and by the federal full faith and credit statute. *See* 28 U.S.C. § 1738 (providing that the judicial proceedings of any state shall have full faith and credit "in every court within the United States"). While Rooker-Feldman principles are closely related to the preclusion arguments advanced by Defendants in their Amended Motion, Defendants neither mention the Rooker-Feldman doctrine nor make an argument that it bars Marshall's substantive claims in this case.[5] Alternatively, Defendants contend that they are entitled to summary judgment because Plaintiffs' various claims fail on their merits. The Court need not address Defendants' alternative argument.

---

[4] The Motion for Trial Date was brought by Marshall and not by the People.

[5] However, as will be discussed shortly, the Court "*must* . . . raise and decide a potential Rooker-Feldman limit on its own motion." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469.1, p. 141 (2d ed. 2002).

This Court, having read the parties' pleadings and papers, requested, in advance, by order, that the parties be prepared to discuss the Rooker-Feldman jurisdictional issue, at the hearing before the Court on January 7, 2010. That issue was discussed extensively at the hearing. For the reasons that follow, the Court finds that it lacks subject matter jurisdiction over Marshall's substantive claims pursuant to the Rooker-Feldman doctrine in light of Judge Parker's determination that the release-dismissal agreement is enforceable.

As stated by Wright and Miller,

> [t]he "Rooker-Feldman" doctrine . . . establishes a nearly redundant limit on federal subject-matter jurisdiction. The basic theory is that only the United States Supreme Court has been given jurisdiction to review a state-court decision. The general statutes that establish original federal subject-matter jurisdiction in the district courts do not extend to an "appeal" from a state-court judgment. This doctrine is nearly redundant because most of the actions dismissed for want of jurisdiction also could be resolved by invoking the claim- or issue-preclusion consequences of the state judgments.

18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469.1, p. 97 (2d ed. 2002). The Sixth Circuit has aptly explained the evolution and contours of the *Rooker-Feldman* doctrine as follows:

> The *Rooker-Feldman* doctrine has evolved from two Supreme Court cases which establish that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." The purpose of the doctrine is to prevent "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."
>
> The *Rooker-Feldman* doctrine bars district courts from hearing both challenges to state court judgments and claims that are "inextricably intertwined" with state court judgments. "In practice this means that when granting relief on the federal claim would imply that the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction."

*Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (citations omitted). *See also Pennzoil Co. v.*

*Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring) ("[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment"). Moreover, "[the] Rooker-Feldman doctrine . . . applies without regard to whether the [state] judgment is correct," 18B Wright and Miller, § 4469.1, p. 133, and "a federal court may, and indeed *must*, raise and decide a potential Rooker-Feldman limit on its own motion." *Id*. at p. 141 (emphasis added).

Applying the Rooker-Feldman doctrine to the present case, it is clear that this Court cannot reach the merits of this case while at the same time honoring Judge Parker's determination that "everyone is bound by the [release-dismissal agreement]." As part of the release-dismissal agreement between Marshall and the City of Farmington Hills, discussed extensively above, Marshall agreed to "a release of civil liability with regard to any events or transactions that arise out" of the present case. Judge Parker has determined that the release-dismissal agreement is enforceable. Specifically, after hearing argument from the parties, Judge Parker expressly stated, from the bench, that "[e]veryone is bound by the agreement that was placed on the record," referring to the release-dismissal agreement. Shortly thereafter, Judge Parker entered a written order denying Marshall's Motion for a Trial Date and dismissing the criminal charges against Marshall in accordance with the agreement. Marshall did not appeal Judge Parker's final order.

The only way that this Court could adjudicate the substantive claims asserted by Marshall in the present case would be to first hold that Marshall did not release those claims. In turn, the Court could only reach this conclusion by holding that the release-dismissal agreement is unenforceable. Judge Parker has already held to the contrary. Thus, "federal relief can only be

9

predicated upon a conviction that the state court was wrong." *See Pennzoil Co.*, 481 U.S. at 25 (Marshall, J., concurring). Because the Court could not reach the merits of this action without first, in effect, overturning Judge Parker's determination that "[e]veryone is bound by the [release-dismissal] agreement," the Court lacks subject matter jurisdiction over Marshall's substantive claims.

Stated differently, the only federal court with the ability to overrule Judge Parker's order is the United States Supreme Court. Because this Court lacks appellate jurisdiction over state court proceedings, Marshall's claims—the adjudication of which would require the Court to undo an order of a state court judge—must be dismissed for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.

Moreover, it should be noted that not only has Judge Parker determined that the release-dismissal agreement is enforceable, she also rejected an argument that is identical to the one now being asserted by Marshall in support of his argument that this Court should not enforce the release-dismissal agreement. Specifically, Marshall argues in his brief as follows:

> [T]he settlement placed on the record in the 47th District Court . . . was a conditional settlement. The agreement unequivocally requires dismissal of the charge upon the parties' agreeing to the terms of a mutually satisfactory press release and a release from civil liability. The parties were never able to agree upon the terms of a press release. Defendants do not dispute that the conditions precedent were not met. In the absence of these conditions being met, there was not valid settlement. The district court, understandably eager to clear its docket of a case that never should have been brought, went ahead and dismissed the charge without the parties agreeing to a press release or civil liability release. Farmington Hills never moved to reinstate the charges.

Pls.' Br. at 9. Marshall advanced the *exact same* argument in the state proceeding before Judge Parker. On the record, Mr. Reed, Marshall's attorney, argued as follows:

> As the Court will recall, we were here on . . . June . . . 21, 2007 and we put

>a settlement on record which dealt with Mr. Marshall and the Farmington Hills Police and their agent dropping subsequent charges on him in exchange for mutually agreeing that Mr. Marshall would not bring a civil lawsuit and agreeing to a mutual press release for lack of a better term.
>
>The contingency upon which the case was resolved did not follow through in that the press release terms did not hammer out because the parties could not agree. Based on the contingency that those things happen, specifically the press release being agreed to, your Honor, I'm asking the Court to afford Mr. Marshall a trial by jury.

Defs.' Ex. 8, p. 3. This argument was rejected by Judge Parker, who enforced the release-dismissal agreement.[6] Therefore, Marshall is asking this Court to do what another court would not. Accordingly, the Court must dismiss this case based on the Rooker-Feldman doctrine.[7]

In addition, the Court notes that "[the] Rooker-Feldman doctrine . . . applies without regard to whether the [state] judgment is correct." 18B Wright and Miller, § 4469.1, p. 133. In *Town of*

---

[6] The Court notes that Marshall, in his Amended Complaint, states:

>66. Mr. Marshall initially agreed to the arrangement but subsequently decided that by accepting the arrangement, he would be allowing the Defendants to avoid the consequences of their illegal and racially motivated actions.
>
>67. For the sake of truth and in an effort to prevent some other minority motorist, who was not as knowledgeable of his constitutional rights as was Mr. Marshall, from suffering similar heavy handedness at the hands of the Farmington Hills Police, Mr. Marshall declined to sign a release and requested a trial on the bogus obstruction charge.

Am. Compl. at ¶¶ 66-67. Thus, Plaintiffs' Amended Complaint does not mention, as a basis for the instant case, Marshall's declining to sign the release because a condition precedent had not been satisfied. Instead, Marshall gives an entirely different reason for not following through with the agreement to which, by his own admission in the Amended Complaint, he "initially agreed to."

[7] Because the case is barred by the Rooker-Feldman doctrine, the Court need not address Defendants' arguments relating to the full faith and credit statute and res judicata.

11

*Newton v. Rumery*, 480 U.S. 386, 389 (1987), the United States Supreme Court addressed the question of "whether a court properly may enforce an agreement in which a criminal defendant releases his right to file an action under 42 U.S.C. § 1983 in return for a prosecutor's dismissal of pending criminal charges." The *Rumery* decision has been aptly summarized by the Sixth Circuit as follows:

> In sum then, the *Rumery* opinion instructs us that before a court properly may conclude that a particular release-dismissal agreement is enforceable, it must specifically determine that (1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests. The burden of proving each of these points falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense.

*Coughlen v. Coots*, 5 F.3d 970, 974 (6th Cir. 1993). *Rumery* is the law in Michigan and has been since 1996. *See Stamps v. City of Taylor*, 218 Mich. App. 626, 628 (1996) (adopting the three-prong *Rumery* analysis).

This Court must honor Judge Parker's determination that the release-dismissal agreement is enforceable and, for the reasons explained above, honoring that determination prevents the Court from addressing the merits of Marshall's substantive claims. Even if Judge's Parker's analysis was faulty or if the result she reached was incorrect, "[the] Rooker-Feldman doctrine . . . applies without regard to whether the [state] judgment is correct." 18B Wright and Miller, § 4469.1, p. 133. The Court notes, again, that Marshall did not appeal Judge Parker's determination that the release-dismissal agreement is enforceable.

## IV. ORDER

For the reasons discussed above,

IT IS ORDERED that Defendants' Amended Motion for Summary Judgment [docket entry

40] is granted as follows: this case is dismissed for lack of subject matter jurisdiction and/or summary judgment is granted in favor of Defendants pursuant to the Rooker-Feldman doctrine.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: January 11, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 11, 2010.

S/Denise Goodine
Case Manager