UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MARSHALL, et al.,

    Plaintiffs,

vs.

CITY OF FARMINGTON HILLS, et al.,

    Defendants.
_____/

Civil Action No.
08-CV-13257

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER
(1) GRANTING IN PART PLAINTIFFS' MOTION FOR RECONSIDERATION,
(2) VACATING THE COURT'S JANUARY 11, 2010, OPINION AND ORDER INSOFAR
AS IT HELD THAT THIS ACTION IS BARRED BY THE ROOKER-FELDMAN
DOCTRINE
(3) VACATING THE JUDGMENT ENTERED ON JANUARY 11, 2010,
(4) REINSTATING DISMISSAL ON OTHER GROUNDS
(5) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and
(6) DENYING DEFENDANTS' MOTION FOR SANCTIONS**

**I. INTRODUCTION**

This is a civil rights case under 42 U.S.C. §§ 1983 and 1985 with pendent state law claims. On January 11, 2010, the Court issued an Opinion and Order in which it granted summary judgment in favor of Defendants and dismissed this case for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.[1] On February 8, 2010, Plaintiff Marshall filed a Motion for Reconsideration of the Court's January 11, 2010, Opinion and Order. Marshall's Motion for Reconsideration is brought under Fed. R. Civ. P. 59(e).

---

[1] The Court will assume the parties' familiarity with the January 11, 2010, Opinion and Order.

1

As stated by the Sixth Circuit, "[a] court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). Marshall contends that the Court committed a clear error of law in its January 11, 2010, Opinion and Order. Specifically, Marshall argues that the Rooker-Feldman doctrine is inapplicable in this case. Marshall relies mainly upon the Sixth Circuit's decision in *Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006), in support of his argument. The *Coles* case, which constricts the Rooker-Feldman doctrine, was not mentioned by the parties during oral argument or in their briefs.

Having reviewed Marshall's motion and the *Coles* case, and for the reasons discussed below, the Court has concluded that the Rooker-Feldman doctrine does not apply in this case. Accordingly, the Court will vacate the portions of its prior Opinion and Order that held otherwise, along with the judgment accompanying the Opinion and Order, which dismissed this case pursuant to the Rooker-Feldman doctrine. However, the Court will reinstate dismissal of the case because, as explained below, while the Rooker-Feldman doctrine is inapplicable, Marshall is collaterally estopped under Michigan preclusion principles from bringing his claims.

## II. THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY

In its January 11, 2010, Opinion and Order, the Court concluded that this case is barred by the Rooker-Feldman doctrine. The Court reasoned as follows:

> The only way that this Court could adjudicate the substantive claims asserted by Marshall in the present case would be to first hold that Marshall did not release those claims. In turn, the Court could only reach this conclusion by holding that the release-dismissal agreement is unenforceable. [State] Judge Parker has already held to the contrary. Thus, "federal relief can only be predicated upon a conviction that the state court was wrong."

2

> *See Pennzoil Co.*, 481 U.S. at 25 (Marshall, J., concurring). Because the Court could not reach the merits of this action without first, in effect, overturning Judge Parker's determination that "[e]veryone is bound by the [release-dismissal] agreement," the Court lacks subject matter jurisdiction over Marshall's substantive claims.
>
> Stated differently, the only federal court with the ability to overrule Judge Parker's order is the United States Supreme Court. Because this Court lacks appellate jurisdiction over state court proceedings, Marshall's claims—the adjudication of which would require the Court to undo an order of a state court judge—must be dismissed for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.

January 11, 2010, Op. and Or. at 9-10.

In *Coles*, the Sixth Circuit clarified the limits of the Rooker-Feldman doctrine. The *Coles* court, discussing the United States Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), and other relevant federal cases, wrote:

> *Exxon Mobil* dealt specifically with a case where there were parallel state and federal cases on the same issue. The court held that normal preclusion jurisprudence, not *Rooker-Feldman*, would guide the federal court decision if the state court reached a decision first. In dicta, the Supreme Court also addressed the circumstance where the plaintiff initiated a federal claim after a state court decision, circumstances such as the case at bar:
>
>> Nor does [*Rooker-Feldman*] stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."
>
> This Circuit and other circuits have taken the Supreme Court's guidance on the application of *Rooker-Feldman* and applied the doctrine only when a plaintiff complains of injury from the state court judgment itself.

* * * *

The Tenth Circuit summarized the difference between a suit barred by *Rooker-Feldman* and normal preclusion principles:

> Appellate review-the type of judicial action barred by *Rooker-Feldman*-consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment. In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not *Rooker-Feldman*.
>
> *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)

*Coles*, 448 F.3d at 858-859 (certain citations omitted) (emphasis in original). Having considered the above excerpt from *Coles*, the Court is now convinced that Michigan preclusion principles, and not Rooker-Feldman principles, apply to bar Marshall's claims in this case. The substantive claims asserted against Defendants in this action are "independent claims" that, if reached, would "den[y] a legal conclusion that a state court has reached in a case to which [Marshall] was a party." Thus, "there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

### III. MARSHALL'S CLAIMS ARE BARRED BY STATE LAW PRECLUSION PRINCIPLES

As stated by the Michigan Supreme Court,

> [c]ollateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined.

*People v. Gates*, 434 Mich. 146, 154-155 (1990). Relatedly, "cross-over estoppel" is where "where an issue adjudicated in a civil proceeding is claimed to be precluded in a subsequent criminal proceeding, or vice versa." *Id.* at 155. "Crossover estoppel . . . is permissible." *Barrow v. Pritchard*, 235 Mich. App. 478, 481 (1999).

In *Gates*, the Michigan Supreme Court stated that:

> [i]n analyzing whether an issue was "actually litigated" in the prior proceeding, the Court must look at more than what has been pled and argued. We must also consider whether the party against whom collateral estoppel is asserted has had a full and fair opportunity to litigate the issue.

434 Mich. at 156-157.

The issue of whether the release-dismissal agreement is enforceable has already been "actually litigated" and "necessarily determined" in the previous state court criminal action before Judge Parker. Because the prior action and the present action involve the same parties and "culminated in a valid, final judgment," Marshall is collaterally estopped from relitigating the issue in this Court. As this Court explained in its January 11, 2010, Opinion and Order,

> it is clear that this Court cannot reach the merits of this case while at the same time honoring Judge Parker's determination that "everyone is bound by the [release-dismissal agreement]." As part of the release-dismissal agreement between Marshall and the City of Farmington Hills . . . Marshall agreed to "a release of civil liability with regard to any events or transactions that arise out" of the present case. Judge Parker has determined that the release-dismissal agreement is enforceable. Specifically, after hearing argument from the parties, Judge Parker expressly stated, from the bench, that "[e]veryone is bound by the agreement that was placed on the record," referring to the release-dismissal agreement. Shortly thereafter, Judge Parker entered a written order denying Marshall's Motion for a Trial Date and dismissing the criminal charges against Marshall in accordance with the agreement. Marshall did not appeal Judge Parker's final order.
>
> The only way that this Court could adjudicate the substantive claims asserted by Marshall in the present case would be to first hold that Marshall did not release those claims. In turn, the Court could only reach this

>      conclusion by holding that the release-dismissal agreement is unenforceable.
>      Judge Parker has already held to the contrary.

January 11, 2010, Op. and Or. at 9.

While this Court erred when it concluded based on this discussion that the Rooker-Feldman doctrine bars the claims asserted in this case, the discussion reproduced above remains entirely sound. That is, the Court cannot adjudicate Marshall's substantive claims in this case without first determining that the release-dismissal agreement is unenforceable. As explained extensively on pages 3-6 of this Court's previous Opinion and Order, Judge Parker heard argument from the parties relating to the issue of whether the release-dismissal agreement is enforceable and expressly held that "[e]veryone is bound by the [release-dismissal] agreement that was placed on the record." That issue was undoubtably "actually litigated" and "necessarily determined" by Judge Parker. Under these circumstances, the preclusion principles of collateral estoppel/issue preclusion and crossover estoppel prevent Marshall from relitigating the issue in this Court.[2]

Moreover, Marshall did not appeal Judge Parker's determination but instead accepted the benefit of it; namely, the dismissal of criminal charges against him.[3] The criminal charges against

---

[2] Again, the Court could not reach the merits of Marshall's substantive claims without first determining that the release-dismissal agreement is unenforceable. Thus, relitigation of the issue is a prerequisite to reaching the substantive merits of Marshall's claims.

[3] Marshall argues in a footnote that he "had no incentive to appeal the judge's ruling" because he "got exactly what he sought" – the dismissal of the criminal charges against him. Marshall Br. at 17 n.9. Marshall contends that the City of Farmington Hills was the party aggrieved by the dismissal of the criminal case because Judge Parker "dismissed the criminal charges despite being advised that the parties had not agreed to a release." *Id*. The Court rejects this argument as disingenuous, at best. The state court transcript unequivocally reveals that the criminal case was dismissed pursuant to the release-dismissal agreement. Any attempt to argue otherwise is baseless. If Marshall had a problem with Judge Parker's decision to enforce the release-dismissal agreement, a decision involving the release of the claims asserted in this action, he should have appealed.

6

Marshall have already been dismissed by Judge Parker with prejudice pursuant to the release-dismissal agreement. By not appealing Judge Parker's determination that the release-dismissal agreement is enforceable, Marshall has accepted his end of the bargain – the dismissal of the criminal charges against him. Marshall now, by the filing of the present action months after the time to appeal Judge Parker's determination expired, wishes to deprive the City of its end of the bargain—the release of all civil claims arising out of this incident—knowing full well that it is too late for the City to revive the criminal charges against him. Even if the Court could, consistent with well-established preclusion principles, evaluate the substantive claims that Marshall agreed to give up in exchange for the dismissal of the criminal charges against him, the Court would be unwilling to do so on equitable grounds. *See generally*, in this regard, 4 C.J.S. *Appeal and Error* § 285 ("[g]enerally, an appeal is barred by a party voluntarily and knowingly accepting the benefits of the order, if that is inconsistent with the right claimed on appeal"). By not appealing Judge Parker's determination that the release-dismissal agreement is enforceable, Marshall has "voluntarily and knowingly accept[ed] the benefits of the order."

In his Motion for Reconsideration, Marshall argues that he is not collaterally estopped from bringing his claims. Marshall asserts two arguments in support of this position. First, Marshall argues that a binding release-dismissal agreement was never reached because one of the contingencies—that the parties agree on the exact language for the press release—was not satisfied. As explained on pages 10-11 of the Court January 11, 2010, Opinion and Order, Marshall advanced the exact same argument in the state proceeding before Judge Parker, who rejected the argument and enforced the release-dismissal agreement. Critically, Marshall did not appeal. Under no circumstances will this Court entertain Marshall's attempt to relitigate the issue. The issue is

7

conclusively determined and settled. The release-dismissal agreement is valid and enforceable and, in the words of Judge Parker, "everyone is bound" by it. Having chosen not to appeal and to instead accept the benefit of the release-dismissal agreement, both of which are decisions that cannot be undone, Marshall is forever barred, as a matter of both law and equity, from bringing his substantive claims, which he agreed to give up in exchange for the dismissal of the criminal charges against him.

Second, Marshall argues that the issue of whether the release-dismissal agreement is binding was never "actually litigated" and "necessarily determined" because, as stated by Marshall, "a judgment that is premised on a settlement does not 'actually litigate and necessarily determine' anything and cannot be used for collateral estoppel purposes." Marshall relies upon *Am. Mut. Liability Ins. Co. v. Mich. Mut. Liability Co.*, 64 Mich. App. 315 (1975), in support of this argument.

There, the Michigan Court of Appeals held that collateral estoppel does not apply to issues resolved by a consent judgment because "[n]othing is adjudicated between two parties to a consent judgment." *Id*. at 327. In so holding, the court wrote:

> The action of the trial judge in signing a [consent] judgment . . . is ministerial only. The parties have not litigated the matters put in issue, they have settled. The trial judge has not determined the matters put in issue, he has merely put his stamp of approval on the parties' agreement disposing of those matters. But a judgment can be given collateral estoppel effect only as to those issues which were actually and necessarily adjudicated. It follows that because the issues involved in the settled case were not actually adjudicated, one of the prerequisites to giving a judgment collateral estoppel effect is not satisfied.

*Id*. (citations and footnote omitted).

*Am. Mut. Liability Ins.* has no application here. *Am. Mut. Liability Ins.* stands for the proposition that issues resolved by a consent judgment are neither litigated nor decided. The issue involved in the present case was both litigated and decided. That is, the issue of whether the release-

8

dismissal agreement is binding and enforceable—the same issue that Marshall urges this Court to reconsider, and the same issue that must be resolved in Marshall's favor before this Court could address the merits of Marshall's substantive claims—was "actually litigated" and "necessarily decided" by Judge Parker in the state court action, as the state court transcripts unequivocally reveal.[4] For this reason, *Am. Mut. Liability Ins.* is irrelevant here.

---

[4] Marshall disagrees and continues, in his Motion for Reconsideration, to press the argument that Judge Parker did not rule on the enforceability of the release-dismissal agreement. The argument is meritless. As the Court emphasized on pages 10-11 of its January 11, 2010, Opinion and Order, Marshall's attorney argued before Judge Parker that the parties should not be bound by the release-dismissal agreement:

> As the Court will recall, we were here on . . . June . . . 21, 2007 and we put a settlement on record which dealt with Mr. Marshall and the Farmington Hills Police and their agent dropping subsequent charges on him in exchange for mutually agreeing that Mr. Marshall would not bring a civil lawsuit and agreeing to a mutual press release for lack of a better term.
>
> The contingency upon which the case was resolved did not follow through in that the press release terms did not hammer out because the parties could not agree. Based on the contingency that those things happen, specifically the press release being agreed to, your Honor, I'm asking the Court to afford Mr. Marshall a trial by jury.

Defs.' Ex. 8, p. 3. Counsel for the City of Farmington Hills was then given an opportunity to respond. After hearing all the argument, Judge Parker stated from the bench:

> Thank you, the record should reflect I've had the opportunity to review the motion and I've heard the argument in court today. I'll indicate for the record that I was a little puzzled when I got this motion for trial date because frankly we – this Court was in session on June 21st in which the parties placed an agreement on the record to resolve all of the issues in this case and other issues surrounding it. I'll certainly indicate that at the time of – first of all, the case had been scheduled for trial I believe on June 18th, the Court was involved in another trial and there were ongoing discussions up to the date – the trial date of June 21st when the matter was called in for trial. An agreement was reached and placed on the record. I know at the time [I] questioned Mr. Meads as to whether he had authority on behalf of the City and questioned not only counsel but Mr. Marshall on the record specifically

9

## IV.  DEFENDANTS' MOTION FOR SANCTIONS

On January 5, 2010, Defendants filed a Motion for Sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.  Defendants contend that Marshall advanced a frivolous lawsuit and perpetuated improper arguments designed to harass Defendants.  As illustrated by the discussion above, this case involves complex jurisdictional and preclusion issues and an award of sanctions would be improper.  Defendants' Motion for Sanctions will therefore be denied.

## V.  ORDER

For the reasons stated above,

IT IS ORDERED that Marshall's Motion for Reconsideration is granted in part as follows:

---

about this agreement and it was stated on the record.

> Further I believe I even asked the parties do you want me to hold on to this case and everyone said no, the case is over and I gave the opportunity so at this point this motion for trial date in my mind is puzzling.  My read of this is that this case is over.  Clearly in looking at the motion there's no authority cited by any party to indicate that would not be the case.  Clearly case law and settlements in which I've had the opportunity to look at for other circumstances certainly indicates that an agreement on the record is in fact a binding agreement as to all parties and it's interesting to note that maybe there's a holdup for a press release.  Frankly, something that happened on June 21st, now that it's August 14th is probably moot anyway.  I'm not sure that the press has any great interest in this file and the Court does have a public record which notes a dismissal and if the press is interested, that's certainly what the court file should show.
>
> At this point I see no authority to grant a trial.  Clearly the settlement placed on the record was voluntarily, understandingly freely made and so far as I'm concerned, this case is over.  Everyone is bound by the agreement that was placed on the record.

*Id*. at pp. 6-8.  Judge Parker did rule on the enforceability of the release-dismissal agreement.

the Rooker-Feldman doctrine is inapplicable to the present case.

IT IS FURTHER ORDERED that the Court's January 11, 2010, Opinion and Order is vacated insofar as it held that this case is barred by the Rooker-Feldman doctrine. The Opinion and Order otherwise remains intact.

IT IS FURTHER ORDERED that the Judgment entered on January 11, 2010, is vacated.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is granted. Plaintiffs' case is dismissed as barred by the doctrines of collateral estoppel/issue preclusion and crossover estoppel under Michigan law. Judgment is entered in favor of Defendants.

IT IS FURTHER ORDERED that Defendants' Motion for Sanctions is denied.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 1, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 1, 2010.

S/Denise Goodine
Case Manager