UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MARSHALL and
CHANDRA MARSHALL,

       Plaintiffs,

v.                                                                                                  Case No. 08-cv-13257
                                                                                     Paul D. Borman
                                                                                   United States District Judge

CITY OF FARMINGTON HILLS, et al.,

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS BASED ON A VALID RELEASE-DISMISSAL AGREEMENT (Dkt. No. 79)**

      This is a civil rights case pursuant to 42 U.S.C. §§ 1983 and 1985.  The Defendants in this matter are Officer Michael Meister, Officer James Jarrett, Sergeant Soderlund, Sergeant William Dwyer, Sergeant Scott Cronin, several unknown Farmington Hills Police Supervisors, and the City of Farmington Hills.  Plaintiffs are David Marshall and Chandra Marshall.

      On March 1, 2010, this Court granted Defendants' motion for summary judgment and dismissed this action, finding that Plaintiffs were collaterally estopped from bringing the instant claims based on a release-dismissal order entered by a Michigan state court.  On May 1, 2012, the United States Court of Appeals for the Sixth Circuit reversed and remanded this Court's March 1, 2010 Opinion and Order, finding that the state court's oral pronouncements were not a valid final order for purposes of collateral estoppel because they were not fully expressed in a written order. (Dkt. No. 76.)  Now before the Court is Defendants' Motion to Dismiss Based on a Valid Release-Dismissal Agreement, filed on August 9, 2012.  (Dkt. No. 79.)  Plaintiffs filed a response on

September 10, 2012. (Dkt. No. 81.) Defendants filed a reply on October 1, 2012. (Dkt. No. 82.) The Court held a hearing on May 1, 2013, during which Defendants produced a signed order from the state court, dated April 3, 2013,[1] and entitled Order Dismissing Case Nos. 06H486832A and 06H486832B and Denying Defendant's Motion for a New Trial. The Court has attached this Order as Exhibit 1 to this Opinion and Order. (*See* attached Exhibit 1.) Plaintiffs filed a Supplemental Brief on May 6, 2013. (Dkt. No. 83.)

For the reasons stated below, the Court will **GRANT** Defendants' motion and **DISMISS** the action.

## I. BACKGROUND

On December 13, 2006, shortly after 1:00 a.m., Defendant Officer Meister conducted a traffic stop of Plaintiff David Marshall's vehicle while Plaintiff Marshall was returning home after work as a City of Detroit Police Officer. After several verbal exchanges concerning the lawfulness of the traffic stop and Plaintiff David Marshall's refusal to relinquish his service weapon, Defendant Officer Jarrett, who had arrived to provide backup for Officer Meister, used a taser to incapacitate Plaintiff, and Plaintiff was arrested. Plaintiff was charged with obstructing a police officer. Three days before Plaintiff was arraigned on these charges, the City of Farmington Hills, in a separate case, charged Plaintiff with misdemeanor child abuse for an incident that had occurred several months prior. Plaintiff was acquitted of the child abuse charge after a jury trial in the 47th District Court in Farmington Hills, Michigan.

The facts surrounding a conditional release-dismissal agreement involving Plaintiff's civil

---

[1] The state court order is stamped with the date April 3, 2013, but counsel represented at the May 1, 2013, hearing before this Court that the state court judge had signed the order on the day before the hearing, April 30, 2013.

claims and criminal charges are pertinent to the instant motion. The Sixth Circuit summarized the relevant facts regarding the release-dismissal agreement as follows:

> Following the resolution of the child abuse case, Marshall and the City of Farmington Hills entered into a conditional release-dismissal agreement for the obstruction charge. This agreement provided that the prosecutor would dismiss the pending obstruction charge with prejudice in exchange for Marshall's releasing his right to file a civil suit under 42 U.S.C. § 1983. At a June 21, 2007 hearing, the parties placed the terms of this agreement on the record. Marshall's attorney informed the court that the release-dismissal was expressly made contingent on agreement between the parties "as to the exact wording of a statement to be prepared for media purposes as well as a release of civil liability with regard to any events or transactions that arise out of the incidences that bring us here today." During this hearing, the judge, the city attorney, and Marshall's attorney each separately stated their understanding that the proposed release-dismissal was subject to the fulfillment of these two conditions.
>
> Negotiations for the two conditions precedent failed as the parties were unable to agree on press release language and never discussed the terms of the civil release. Marshall believed that this failure to satisfy the conditions precedent rendered the release-dismissal unenforceable, and filed a motion for a trial date on the obstruction charge. During an August 14, 2007 hearing, the state court denied Marshall's request for a trial date, finding that the release-dismissal was valid despite the parties' failure to fulfill the two conditions precedent. The court stated:
>
>> My read of this is that this case is over. . . . [I]t's interesting to note that maybe there's a holdup for a press release. Frankly, something that happened [earlier], now that it's August 14th is probably moot anyway. I'm not sure that the press has any great interest in this file and the Court does not have a public record which notes a dismissal and if the press is interested, that's certainly what the court file would show.
>>
>> At this point I see no authority to grant a trial. Clearly the settlement placed on the record was voluntarily, understandingly freely made and so as far as I'm concerned, this case is over. Everyone is

3

> bound by the agreement that was placed on the record.
>
> The state court, issuing the ruling from the bench, dismissed the criminal obstruction charges and found the parties to be bound by the terms of the release-dismissal agreement. The state court later reduced this ruling to writing in an order stating "that Plaintiff's Motion for Trial Date is hereby denied [and the criminal charges] are dismissed with prejudice." The order made no mention of the release-dismissal agreement.

*Marshall v. City of Farmington Hills*, 479 F. App'x 661, 662-63 (6th Cir. 2012).

Plaintiffs filed the instant Complaint alleging various civil tort claims against Defendants after the state court dismissed the criminal charges against Plaintiff David Marshall. On March 1, 2010, this Court entered an Opinion and Order dismissing Plaintiffs' claims, finding that the claims were barred by the release-dismissal agreement entered by the state court, and that Plaintiffs were collaterally estopped from relitigating the enforceability of the release-dismissal agreement, because its enforceability had already been "actually litigated" and "necessarily determined" by the state court. (Mar. 1, 2010 Op. and Order 4-9.) The Sixth Circuit reversed, holding as follows:

> The district court found collateral estoppel applicable to preclude the Marshalls' challenge to the release-dismissal because it treated the state court's statement that "[e]veryone is bound by the agreement that was placed on the record" as a valid, final judgment. The state court, however, did not include this ruling in the written order nor reduce it to writing. The written order only stated that "[p]laintiff's Motion for Trial Date is hereby denied [and the criminal charges] are dismissed with prejudice." The only time the validity of the release-dismissal was addressed was in this oral pronouncement at the August 14, 2007 hearing. Because a Michigan court "speaks only through its orders and judgments and not its oral pronouncements," [*Hall v.*] *Fortino*[, 158 Mich. App. 663, 405 N.W.2d 106,] at 108 [(1986)], the oral statement addressing the release-dismissal's validity cannot be construed as a valid and final judgment.

*Marshall*, 479 F. App'x at 664-65. The Sixth Circuit remanded the case "for a determination as to

4

the enforceability of the release-dismissal." *Id*. at 661.

At the May 1, 2013 hearing on Defendants' motion, counsel for Defendants submitted to the Court a signed order from the state court dismissing the state court case with prejudice, "for all of the reasons stated on the record during the June 21, 2007 Plea Hearing, the August 14, 2007 Hearing on Defendant's Motion for Trial Date, and the Plaintiff, City of Farmington Hills' Motion to Amend and Correct Oversight on July 31, 2012 . . . ." (Apr. 30, 2013 State Court Order at 1-2, attached.)

## II. LEGAL STANDARD

Although Defendants title their motion as a "motion to dismiss," Defendants employ the standard used for summary judgment motions under Federal Rule of Civil Procedure 56. Under this standard, the Court construes all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. The dispute over a material fact must be "'genuine,' that is, if the evidence is such that a reasonable juror could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After considering all of the record evidence, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. ANALYSIS

### A. Amended State Court Judgment

The April 3, 2013 written order from the state court, which explicitly incorporates "the reasons stated on the record during the June 21, 2007 Plea Hearing, [and] the August 14, 2007 Hearing on [Marshall]'s Motion for Trial Date," and further provides that the release-dismissal

5

agreement "was voluntarily, understandingly and freely made[,]" has collateral estoppel effect as to Plaintiffs' claims.

In remanding this case, the Sixth Circuit noted that "[t]here is no question that the Defendants raised the validity of the release-dismissal and submitted it to the [state] court for determination during the August 14, 2007 hearing." *Marshall*, 479 F. App'x at 663. The Sixth Circuit found that the Court erred because the oral statements addressing the release-dismissal were not reduced to a written order. *Id.* at 665.

This Court concludes that the April 3, 2013 written order resolves this problem by explicitly incorporating the oral statements during the August 14, 2007 state court hearing, and noting that the release-dismissal agreement was voluntarily, understandingly, and freely made. The Court further finds that the April 3, 2013 order is properly considered *nunc pro tunc*, now for then, because it corrects a mere clerical omission from the state court's previous written order, and does not otherwise change or alter the previous written order. *See Sleboede v. Sleboede*, 384 Mich. 555, 559 n. 6 (1971) (noting that "[t]he Latin phrase is merely descriptive of the inherent power of the court to make its records speak the truth – *to record that which was actually done, but omitted to be recorded*." (emphasis added; citation omitted)).

Plaintiffs contend that an amended order could not reopen the collateral estoppel issue, but Plaintiffs offer no further argument or case law to support this proposition.

As this Court noted in its March 1, 2010 Opinion and Order, Plaintiffs' challenges to the validity of the release-dismissal agreement were litigated before the state court during the August 14, 2007 hearing. (Mar. 1, 2010 Op. and Order at 5-6.) Because the state court's decision that the release-dismissal agreement is valid and binding on all parties has been reduced to a written order,

the Court cannot hold that the release-dismissal agreement is invalid in this case, because the state court "has already held to the contrary." (*Id.*)

**B. Validity of Release-Dismissal Agreement**

Although the April 3, 2013 written order addresses the validity of the release-dismissal agreement, the Sixth Circuit remanded this matter to this Court "to evaluate the validity of the release-dismissal." *Marshall*, 479 F. App'x. at 665. In evaluating the validity of the release-dismissal agreement there are two issues for the Court to determine: (1) whether the failure to reach an agreement on a press release renders the release-dismissal agreement unenforceable, and (2) whether evidence of prosecutorial misconduct renders the release-dismissal agreement unenforceable.

*1. Failure to Reach Agreement on a Press Release*

Plaintiffs argue that the release-dismissal agreement is unenforceable because the conditions precedent to the agreement – specifically, mutual agreement on the exact wording of a press release – were never fulfilled.

"A condition precedent is a fact or event that the parties intend must take place before there is a right to performance." *Able Demolition v. Pontiac*, 275 Mich. App. 577, 583 (2007) (citation and internal quotation marks omitted). "Courts are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language of the contract." *Reed v. Citizens Ins. Co. of America*, 198 Mich. App. 443, 447 (1993), *overruled on other grounds*, *Griffith v. State Farm Mut. Auto. Ins. Co.*, 472 Mich. 521 (2005).

Defendants argue, in a footnote, that the press release agreement was merely a stipulation to the entire agreement, not a condition precedent, and thus does not invalidate the release-dismissal

agreement. (Defs.' Br. in Supp. of Mot. to Dismiss 9, n. 5.) Defendants offer little in the way of argument to support this contention, providing only a general citation to a case, *Mikonczyk v. Detroit Newspapers, Inc.*, 238 Mich. App. 347 (1999), without pinpointing any holding or language in that case. In *Mikonczyk*, the Michigan Court of Appeals held, in part, that language stating an agreement was "subject to the satisfaction of each party" was not a condition precedent to the parties' settlement agreement, "because it was not intended to limit either parties' performance under the contract." *Id*. at 350. Defendants do not cite any evidence in the instant record showing that the parties' agreement to a press release was not intended to limit either parties' performance under the contract.

Plaintiff David Marshall's attorney in the state court matter, Arnold Reed, at the June 21, 2007 state court hearing, stated that the release-dismissal agreement was "contingent upon an agreement as between the prosecutor and [Mr. Reed] as to the exact wording of a statement to be prepared for media purposes as well as a release of civil liability with regard to any events or transactions that arise out of the incidences that bring us here today." (Defs.' Mot. to Dismiss, Ex. 3, June 21, 2007 Hearing Tr. 3.) The Sixth Circuit interpreted this language, albeit without an analysis under Michigan law, as establishing "two conditions precedent": agreed language in a press release and agreed terms of a civil release. *Marshall*, 479 F. App'x at 662. The Court agrees and finds that the language used by Mr. Reed at the June 21, 2007 hearing, that the release-dismissal agreement was "contingent upon" a mutual agreement on language in a press release, is sufficient to establish that the parties intended the press release to be a condition precedent to the release-dismissal agreement.

Defendants argue that Plaintiffs willfully failed to permit the occurrence of the condition

8

precedent by refusing to agree on press release language. "Where a party prevents the occurrence of a condition, the party, in effect, waives the performance of the condition." *Harbor Park Market, Inc. v. Gronda*, 277 Mich. App. 126, 131-32 (2007). Defendants claim that they submitted two versions of a press release for Plaintiffs' approval, neither of which were accepted, while Plaintiffs did not submit any drafts for approval.

Defendants rely on an unpublished Michigan Court of Appeals decision, *Jakubs v. Betten Family Chevy Olds*, No. 228523, 2001 WL 1353659 (Mich. Ct. App. Nov. 2, 2001). That case involved a dispute regarding the flow of water from the defendant's property onto the plaintiffs' property, due to construction on defendant's property. *Id*. at *1. The parties entered into a settlement agreement in which an engineer hired by the plaintiffs would prepare a site plan for a drainage ditch that would channel the water away from the plaintiffs' property, and the plans would be submitted to an engineer hired by defendant for approval. *Id*. Approval of the plans was an expressed condition precedent to the settlement agreement. *Id*. After approximately two years the parties had failed to produce a mutually agreeable site plan. *Id*. at *2. The trial court found that the "Plaintiffs ha[d] persistently sought to prevent th[e] settlement from being implemented," and therefore dismissed the plaintiffs' claim with prejudice. *Id*. at *2-3.

The Michigan Court of Appeals affirmed, finding "that plaintiffs were required to take certain steps to facilitate the fulfillment of the condition, and that they did not do so." *Jakubs*, 2001 WL 1353659, at *4. The court noted that, "[s]pecifically, the settlement agreement required plaintiffs to submit a site plan consistent with the parties' agreement to defendant's expert for approval . . . . Because plaintiffs failed to do so, they may not now rely on the nonfulfillment of this condition to excuse their liability." *Id*.

The record in this case is clear that Plaintiffs willfully refused to abide by the terms of the June 21, 2007 settlement agreement. At the August 14, 2007 hearing, Steve Meads, attorney for the City of Farmington Hills, stated as follows:

> Your Honor, I had prepared in conjunction with the Farmington Hills Police Department and specifically Lieutenant Connor as or Commander Connor as it related to a press release. I late that afternoon submitted that press release to counsel and his client Mr. Marshall. Apparently Mr. Marshall did not agree with that press release, a second press release was drafted. I emailed that to counsel and after that email was received by counsel, it was indicated to me that Mr. Marshall wanted a jury trial, he did not want to go along with the settlement agreement that was placed on the record.
>
> Your Honor, I don't feel that Mr. Marshall in good faith pursued the agreement that he agreed to on the record that afternoon, we never even got to the civil release because we never got over the mutual press release hurdle that both the defendant and I agreed upon, so your Honor, I don't feel that Mr. Marshall acted in good faith in agreeing to what he had agreed to on the record.

(Defs.' Mot. to Dismiss, Ex. 5, Aug. 14, 2007 H'rg Tr. 4-5.)

The press release revisions, which represent Plaintiffs' sole effort to cooperate in the settlement agreement, attached to Plaintiffs' Response as Exhibit 5, contain no constructive commentary or alternative wording for the press release. (Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss, Ex. 5, Revisions.) The suggested revisions include the apparent deletion of at least seven sentences, although a large "X" is drawn over the entirety of the press release. (*Id.*) Plaintiffs provided no reasoning for their suggested revisions, other than the phrases "Hell no," "No way," "This is a jury issue," and "More neutral." (*Id.*) The second proposed press release sent by Defendants incorporates several of the deletions suggested by Plaintiffs. (Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss, Ex. 6, Revised Press Release.) However, Plaintiffs admit that they did not send Defendants any revisions for the second proposed press release. Plaintiff David Marshall states

that he "came to the conclusion that the City would never agree to language which cleared [him] of wrongdoing, so [he] asked for a trial . . . ." (Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss, Ex. 4, Marshall Aff. ¶ 18.) It is clear, however, that Plaintiffs' suggested revisions were not ignored, and that Defendants were attempting to incorporate Plaintiffs' changes in the revised press release.

Plaintiffs thus admit that they refused to cooperate with Defendants in reaching mutually agreeable language for the press release. Plaintiffs' argument that continuing to negotiate with Defendants would have been "an exercise in futility," (Pls.' Br. in Opp. to Defs.' Mot. to Dismiss 15), is not well founded. It is apparent based on Exhibits 5 and 6 attached to Plaintiffs' own pleading in this matter that Defendants did incorporate some of the changes requested by Plaintiffs.

In their Supplemental Brief, Plaintiffs have submitted excerpts from the deposition of Arnold Reed, Plaintiff David Marshall's attorney in the state court matter. Mr. Reed testified that he spoke with the Farmington Hills City Attorney, Mr. Meads, "on numerous occasions and made proposals to Mr. Meads about what needed to be in [the press release], and what needed to be out." (Pls.' Supp. Br., Ex. 1, Reed Dep. 103.) Plaintiffs contend that this testimony shows that they attempted to negotiate press release language in good faith. Plaintiffs also assert that the testimony establishes that Defendant Farmington Hills' insistence on certain language exonerating the Defendant officers of any wrongdoing caused the press release negotiations to fail. (Reed Dep. 96-97.) Mr. Reed's testimony does not, however, refute the record evidence, noted *supra*, that Plaintiff David Marshall refused to negotiate the press release language despite Defendant Farmington Hills' apparent attempts to incorporate Plaintiff's changes.

Plaintiffs' argument that they acted in good faith because there was nothing in the agreement restricting Plaintiffs' ability to approve or disapprove of the press release is also unavailing.

11

Plaintiffs are correct that they were not limited in their decision to approve or disapprove of the press release, but Plaintiffs were obligated to communicate this approval and/or disapproval to Defendants in attempting to reach mutually agreeable language. Plaintiffs failed to so communicate with Defendants regarding the second press release.

Plaintiffs' unilateral decision to cease negotiating with Defendants about the press release language does not relieve Plaintiffs from their obligations under the settlement agreement entered on June 21, 2007. "Once a contract to settle legal claims has been entered into, a unilateral change of mind is not a ground for excusing performance." *Reed*, 198 Mich. App. at 447. Plaintiffs thus cannot claim the release-dismissal agreement is invalid because of the failure to reach an agreement regarding the press release, because "there [was] an implied agreement that the promisor will place no obstacle in the way of the happening of such event[.]" *Harbor Park Market*, 277 Mich. App. at 131 (quoting *Mehling v. Evening News Ass'n*, 374 Mich. 349, 352 (1965)). Accordingly, the release-dismissal agreement is not invalid based on the parties' failure to satisfy the condition precedent of agreeing on a press release, because Plaintiff David Marshall admits he unilaterally decided to stop negotiating the press release language after entering into the agreement.

Defendants point out that Plaintiff David Marshall admits in the First Amended Complaint that he changed his mind after initially agreeing to the settlement. *See* First Am. Compl. ¶ 66 (alleging that Plaintiff David Marshall "initially agreed to the [settlement] arrangement but subsequently decided that by accepting the arrangement, he would be allowing the Defendants to avoid the consequences of their illegal and racially motivated actions."), and ¶ 67 (alleging that Plaintiff David Marshall "declined to sign a release and requested a trial on the bogus obstruction charge."). Defendants argue that these allegations constitute an admission of fact that is binding on

12

Plaintiffs. "Judicial admissions eliminate the need for evidence on the subject matter of the admission, as admitted facts are no longer at issue. Once made, the subject matter of the admission should not be reopened in the absence of a showing of exceptional circumstances." *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549, 550-51 (6th Cir. 1986).

There is no need for the Court to find that Plaintiffs' allegations constitute a judicial admission, because the fact that Plaintiff David Marshall changed his mind after entering into the settlement agreement is undisputed. Plaintiff David Marshall admitted in his affidavit that he decided he no longer wanted to negotiate the press release language after receiving a second draft of the press release from Defendant Farmington Hills. (Marshall Aff. ¶¶ 17-18.) Plaintiffs do not dispute the fact that Plaintiff David Marshall changed his mind after agreeing to the settlement on June 21, 2007, and in fact have submitted an affidavit from Plaintiff David Marshall reiterating this fact.

In sum, viewing the evidence in the record, including Plaintiff David Marshall's admissions in his affidavit, in a light most favorable to Plaintiffs, a reasonable juror could not conclude that Plaintiffs fully and in good faith participated in the agreement to negotiate a press release.

*2. Prosecutorial Misconduct*

Defendants argue that the release-dismissal agreement is valid and enforceable. Defendants rely on *Town of Newton v. Rumery*, 480 U.S. 386 (1987), which held that a release-dismissal agreement was enforceable where it was voluntarily entered into, where there was no evidence of prosecutorial misconduct, and where the enforcement of the agreement did not adversely affect the public interest. *Id.* at 397-98. The Sixth Circuit commented on the *Rumery* factors in *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993), noting that, "[w]hile a district court conducting a *Rumery* analysis

13

should not prejudge the civil plaintiff's § 1983 claim, the existence of substantial evidence of police misconduct in a particular case is by no means irrelevant to a proper *Rumery* inquiry, since it could be probative of the motives of the prosecutor for seeking such an agreement, as well as the degree to which enforcing the agreement would serve the public interest." *Id.* at 974. The Sixth Circuit further explained that "these agreements should be scrutinized closely in cases where substantial evidence supports an allegation of police misconduct . . . ." *id*. In elaborating on the "prosecutorial misconduct" factor, the Sixth Circuit stated:

> Examples of such prosecutorial misconduct would include situations where, following their use of excessive force, police officers file unfounded criminal charges as bargaining chips to cover up their own conduct or to induce the victim to give up his cause of action; or where a prosecutor, upon discovering that the victim has a meritorious civil claim, files frivolous criminal charges in order to protect the police officers.

*Id*.

There is no dispute that Plaintiff David Marshall voluntarily agreed to the settlement agreement. At the June 21, 2007 hearing, the following exchange took place between Plaintiff David Marshall and the state court:

> THE COURT: Thank you. Mr. Marshall, you do understand that you do have the right to have a trial by a judge or a jury on these matters?
> DEFENDANT MARSHALL: Yes.
> THE COURT: And obviously if I adopt this resolution there will be no trial in this matter, do you understand that?
> DEFENDANT MARSHALL: Yes.
> THE COURT: Is anyone forcing you to enter this agreement?
> DEFENDANT MARSHALL: No.
> THE COURT: Is this your own choice?
> DEFENDANT MARSHALL: Yes.
> THE COURT: Have you had the opportunity to discuss this agreement with counsel?
> DEFENDANT MARSHALL: Yes.

14

(June 21, 2007 Hr'g Tr. 4-5.) Furthermore, in his affidavit, Plaintiff David Marshall states that he "agreed to allow the City to dismiss the charges if [Marshall and Defendants] could agree on the wording of a statement to be released to the press and on the scope of a release from civil liability." (Marshall Aff. ¶ 14.) Accordingly, there is no dispute that Plaintiff David Marshall voluntarily agreed to the release-dismissal agreement, subject to the two conditions precedent.

Plaintiffs argue that the *Rumery* factors do not apply in the instant case, because a release-dismissal agreement was never reached based on the failure to satisfy the conditions precedent. This argument fails for the reasons stated *supra*. Plaintiffs also argue that, if the *Rumery* factors do apply, then the release-dismissal agreement is invalid because Plaintiffs have produced evidence of prosecutorial misconduct. Specifically, Plaintiffs contend that an old child abuse charge against him was revived after his arrest, and that Farmington Hills police officers frequently parked outside of his house.

The Court finds that the release-dismissal agreement at issue did not result from prosecutorial misconduct. The Court notes that Plaintiff David Marshall entered into the release-dismissal agreement *after* his trial clearing him of the child abuse charges. The child abuse charges therefore could not have influenced Plaintiff's decision at the time he agreed to the release-dismissal. Aside from his acquittal, there is no evidence that the child abuse charge brought against Plaintiff David Marshall was frivolous.

Furthermore, the Court finds significant the fact that Plaintiff David Marshall was an extremely sophisticated criminal defendant. Plaintiff David Marshall is a veteran police officer who is very familiar with the criminal justice system. At his deposition, Plaintiff stated that he worked in the City of Detroit law department from 2000 to 2004, and that he returned to the law department

15

as a supervisor in 2005 or 2006. (Marshall Dep. 14-15.) In addition, Plaintiff was represented by counsel in the state court when he agreed to the release-dismissal. *See Burke v. Johnson*, 167 F.3d 276, 285 (6th Cir. 1999) (finding that a release-dismissal agreement was enforceable where the defendant, who was represented by counsel, "had an eleventh grade education, could read and write English, and was 'street wise' in that the encounter with the Jackson Township police was not his first contact with the criminal justice system; he had a lengthy criminal history.").

The Court further finds significant the fact that the release-dismissal agreement in this case was entered in a judicial proceeding, where both parties were represented by attorneys. "As the *Rumery* Court observed, 'the possibility of abuse is clearly mitigated if the release-dismissal agreement is executed under judicial supervision.'" *Id*. (citing *Rumery*, 480 U.S. at 402).

Plaintiffs have not produced "substantial evidence support[ing] an allegation of police misconduct[.]" *Coughlen*, 5 F.3d at 974. Plaintiff David Marshall, as an experienced police officer who worked for several years in the City of Detroit law department, is familiar with the criminal justice system, and any possibility for abuse regarding the release-dismissal agreement was mitigated by judicial supervision of the agreement. The Court thus finds that Plaintiff David Marshall voluntarily entered into the release-dismissal agreement, that the release-dismissal agreement is valid and enforceable, and that it bars Plaintiffs' claims in this matter.

## IV. CONCLUSION

For the reasons stated above, the Court will:

(1) **GRANT** Defendants' Motion to Dismiss Based on a Valid Release-Dismissal Agreement; and

  (2) **DISMISS** the action.

**SO ORDERED.**

                s/Paul D. Borman  
                PAUL D. BORMAN  
                UNITED STATES DISTRICT JUDGE

Dated:  July 2, 2013

CERTIFICATE OF SERVICE

  The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 2, 2013.

                s/Deborah R. Tofil  
                Deborah R. Tofil  
                Case Manager (313) 234-5122

**EXHIBIT 1**

# STATE OF MICHIGAN

## IN THE DISTRICT COURT FOR THE 47TH JUDICIAL DISTRICT COURT

CITY OF FARMINGTON HILLS,

        Plaintiff,

vs.

DAVID LEE MARSHALL,

        Defendant.

Case Nos. 06H486832A
              06H486832B

Hon. Marla E. Parker

---

| | |
|---|---|
| STEPHEN G. MEADS (P39424)<br>JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C.<br>Assistant City Attorney<br>34405 W. 12 Mile Rd., Ste 200<br>Farmington Hills, MI 48331<br>(248)489-4100 / 234<br>smeads@jrsjlaw.com | FRANKIE JOSEPH RIVERS (P62973)<br>STEFAFI & STEFANI, P.C.<br>Attorney for Defendant Marshall<br>512 E. 11 Mile Road<br>Royal Oak, MI 48067<br>(248) 544-3400<br>frank@stefani-law.com |

## ORDER DISMISSING CASE NOS. 06H486832A and 06H486832B AND DENYING DEFENDANT'S MOTION FOR A NEW TRIAL

At session of said court held in the City of Farmington Hills,
County of Oakland, State of Michigan on
June 21, 2007, August 14, 2007 and July 31, 2012

PRESENT: _____
Honorable Marla E. Parker
District Court Judge

The parties, having placed a settlement agreement on the record, Defendant David Marshall, having filed a Motion for Trial Date in the above-referenced matters, for all of the reasons stated on the record during the June 21, 2007 Plea Hearing, the

August 14, 2007 Hearing on Defendant's Motion for Trial Date, and the Plaintiff, City of Farmington Hills' Motion to Amend Order and Correct Oversight on July 31, 2012, and the Court being fully advised in the premises;

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Trial Date is hereby denied for the reason that the parties in this matter have entered into, and placed on the record, a release-dismissal agreement, also known as a settlement agreement, that was voluntarily, understandingly and freely made and binds all parties thereto.

**IT IS FURTHER ORDERED** that Case Nos. 06H486832A and 06H486832B are dismissed, with prejudice, for the reason that the parties in this matter have entered into, and placed on the record, a release-dismissal agreement, also known as a settlement agreement, that was voluntarily, understandingly and freely made and binds all parties thereto.

This is a final order that closes the case.

HONORABLE MARLA E. PARKER
DISTRICT COURT JUDGE

47TH DISTRICT COURT
2013 APR -3 PM 12: 39